**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

ANDREA VELEZ,

                                        Plaintiff,

                                                    Index No.: 1:25-cv-01283-JHR

                        - against –

                                                    **ANSWER AND**
                                                    **COUNTERCLAIM**

MICHAEL NAYSHTUT,

                                        Defendant.

------------------------------------------------------------------ x


   Defendant Michael Nayshtut ("Defendant" or "Nayshtut"), by and through his attorneys,

The Law Offices of Jeffrey Lichtman and Nesenoff & Miltenberg, LLP, answering the Complaint

filed by Andrea Velez ("Plaintiff" or "Velez"), hereby sets forth and alleges as follows:

## NATURE OF THE ACTION

   1.      Defendant denies the allegation set forth in this paragraph.

   2.       Defendant denies the allegation set forth in this paragraph.

   3.      Defendant denies the allegation set forth in this paragraph.

   4.      Defendant denies the allegation set forth in this paragraph.

## PARTIES

   5.      Defendant does not have sufficient personal knowledge to affirm or deny.

   6.      Defendant admits the allegation set forth in this paragraph.

   7.      Defendant does not have sufficient personal knowledge to affirm or deny.

## JURISDICTION AND VENUE

   8.      Defendant admits the allegations set forth in this paragraph only to the extent that

1

the parties are citizens of different states and an amount in controversy exists that likely exceeds $75,000, though Defendant respectfully submits that it will be Plaintiff who will be judgment debtor, not Defendant.

9.    Defendant admits the allegations set forth in this paragraph.

## **BACKGROUND**

10.    Defendant does not have sufficient personal knowledge to affirm or deny.

11.    Defendant denies the allegations set forth in this paragraph.

12.    Defendant denies the allegation set forth in this paragraph.

13.    Defendant denies the allegation set forth in this paragraph.

14.    Defendant denies the allegation set forth in this paragraph.

15.    Defendant does not have sufficient personal knowledge to affirm or deny.

16.    Defendant admits the allegations set forth in this paragraph.

17.    Defendant admits the allegations set forth in this paragraph.

18.    Defendant denies the allegation set forth in this paragraph.

19.    Defendant admits the allegation set forth in this paragraph.

20.    Defendant denies the allegation set forth in this paragraph.

21.    Defendant denies the allegation set forth in this paragraph.

22.    Defendant denies the allegation set forth in this paragraph.

23.    Defendant denies the allegation set forth in this paragraph.

24.    Defendant denies the allegation set forth in this paragraph.

25.    Defendant denies the allegation set forth in this paragraph.

26.    Defendant denies the allegation set forth in this paragraph.

27.    Defendant denies the allegation set forth in this paragraph.

28.     Defendant denies the allegation set forth in this paragraph.

29.     Defendant denies the allegation set forth in this paragraph.

30.     Defendant denies the allegation set forth in this paragraph.

31.     Defendant denies the allegation set forth in this paragraph.

32.     Defendant denies the allegation set forth in this paragraph.

33.     Defendant denies the allegation set forth in this paragraph.

34.     Defendant denies the allegation set forth in this paragraph.

35.     Defendant denies the allegation set forth in this paragraph.

36.     Defendant denies the allegation set forth in this paragraph.

37.     Defendant denies the allegation set forth in this paragraph.

38.     Defendant denies the allegation set forth in this paragraph.

## COUNT I SEXUAL HARASSMENT

39.     Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

40.     Defendant denies the allegation set forth in this paragraph.

41.     Defendant denies the allegation set forth in this paragraph.

42.     Defendant denies the allegation set forth in this paragraph.

43.     Defendant denies the allegation set forth in this paragraph.

44.     Defendant denies the allegation set forth in this paragraph.

45.     Defendant denies the allegation set forth in this paragraph.

46.     Defendant denies the allegation set forth in this paragraph.

47.     Defendant denies the allegation set forth in this paragraph.

**COUNT II SEXUAL BATTERY**

48.    Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

49.    Defendant denies the allegation set forth in this paragraph.

50.    Defendant denies the allegation set forth in this paragraph.

51.    Defendant denies the allegation set forth in this paragraph.

52.    Defendant denies the allegation set forth in this paragraph.

53.    Defendant denies the allegation set forth in this paragraph.

54.    Defendant denies the allegation set forth in this paragraph.

55.    Defendant denies the allegation set forth in this paragraph.

**COUNT III SEXUAL ASSAULT**

56.    Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

57.    Defendant denies the allegation set forth in this paragraph.

58.    Defendant denies the allegation set forth in this paragraph.

59.    Defendant denies the allegation set forth in this paragraph.

60.    Defendant denies the allegation set forth in this paragraph.

61.    Defendant denies the allegation set forth in this paragraph.

**COUNT IV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

62.    Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

63.    Defendant denies the allegation set forth in this paragraph.

64.    Defendant denies the allegation set forth in this paragraph.

65.   Defendant denies the allegation set forth in this paragraph.

66.   Defendant denies the allegation set forth in this paragraph.

67.   Defendant denies the allegation set forth in this paragraph.

## COUNT V NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

68.   Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

69.   Defendant denies the allegation set forth in this paragraph.

70.   Defendant denies the allegation set forth in this paragraph.

71.   Defendant denies the allegation set forth in this paragraph.

72.   Defendant denies the allegation set forth in this paragraph.

73.   Defendant denies the allegation set forth in this paragraph.

## COUNT VI CRIME OF VIOLENCE MOTIVATED BY GENDER

74.   Defendant repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

75.   Defendant denies the allegation set forth in this paragraph.

76.   Defendant denies the allegation set forth in this paragraph.

77.   Defendant denies the allegation set forth in this paragraph.

78.   Defendant denies the allegation set forth in this paragraph.

79.   Defendant denies the allegation set forth in this paragraph.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE
### Actual Innocence

80.   Defendant Nayshtut is innocent of all of the alleged acts and/or omissions contained in the Plaintiff's Complaint.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE
### Failure to State a Claim

81.     The Complaint, and each purported cause of action therein alleged, fails to state

facts sufficient to constitute a cause of action against Defendant.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE
### Comparative Negligence

82.     Without admitting the allegations contained in the Complaint, Defendant alleges

that Plaintiff, by her acts and/or omissions, conducted herself so as to directly and proximately

cause or contribute to the injury, loss, and damages alleged in the Complaint, thereby either barring

completely, or partially, the damages sought in the Plaintiff's Complaint.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE
### Assumption of Risk

83.     Without admitting the allegations contained in the Complaint, Defendant alleges

that Plaintiff, by her acts and/or omissions, assumed the risk of the alleged injury, loss, and

damages alleged in the Complaint.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate

84.     Without admitting the allegations contained in the Complaint, Defendant is

informed and believes, and on that basis alleges, that Plaintiff has failed or refused to exercise

reasonable care and diligence to avoid loss and minimize damages and therefore Plaintiff may not

recover for losses that could have been prevented by reasonable efforts on her part. Therefore,

Plaintiff's recovery, if any, should be reduced by the failure of Plaintiff to mitigate her damages, if

any.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE
### Apportionment of Fault

85.     Defendant Nayshtut denies any and all liability with respect to the damages alleged

6

in Plaintiff's Complaint. However, if Defendant Nayshtut is found to be liable for any of the damages alleged in the Complaint, then Defendant Nayshtut alleges his conduct was not the sole and proximate cause of the damages alleged. Accordingly, the damages awarded to Plaintiff, if any, should be apportioned according to the respective fault of the parties, persons, and entities who caused and/or contributed to said damages, to the extent permitted by law.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE
**Estoppel**

86.    Each and every cause of action in the Complaint is barred by the doctrine of estoppel.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE
**Waiver**

87.    Plaintiff's conduct, by her acts and/or omissions, is sufficient to constitute a waiver of any negligence alleged in the Complaint.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE
**Unclean Hands**

88.    Each and every cause of action in the Complaint is barred by the doctrine of unclean hands.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE
**False Accusations**

89.    The Complaint and each purported cause of action therein alleged, is fatally flawed and otherwise cannot stand because all allegations made by Plaintiff's are false and were made for ulterior motives including, but not limited to, revenge, unfair monetary advantage, and media notoriety.

### COUNTERCLAIMS

### FACTS COMMON TO ALL COUNTERCLAIMS

90.    Andrea Velez, a former co-conspirator of the Sinaloa Cartel, fabricated allegations

of sexual assault and harassment against Nayshtut, an accomplished and well-established medical doctor in New York and New Jersey, threatened to pursue bogus criminal and civil actions against him, made false and malicious statements about him, and threatened to generate a media blitz based on her lies. Velez's motives for making her false claims and statements are now clear. Velez wanted to destroy Nayshtut's reputation and successful medical career, garner attention for herself, and extract millions of dollars from Nayshtut. This is not the first time Velez has engaged in extortionary behavior—indeed, this has been a pattern for Velez with other men in an attempt to extort money.

91.    Nayshtut and Velez met in or around March 2023, when they both maintained business offices in the same commercial building in the City of New York. At the time, Nayshtut was running his own pain management practice in the building.

92.    Shortly thereafter, Nayshtut and Velez entered into a joint business venture owning and operating a medical spa in New York. Unbeknownst to Nayshtut, who believed that Velez was genuine in her pursuit of a business venture, Velez's goal was to lure Nayshtut to fund an exorbitant amount of equipment and finances for the medical spa, and later falsely claim that Nayshtut had abused and harassed her and thereby lay the groundwork for a financial settlement.

93.    To implement her plan, Velez initially agreed to pay Nayshtut for the medical equipment, rent, and other necessities for the spa, and then, once Velez's payments were due, Velez threatened to tell Nayshtut's family, patients, and even the police, that Nayshtut had raped her if he required further payment from her.

94.    Moreover, Velez demanded that Nayshtut leave his wife for her. When Nayshtut did not comply and informed Velez that he was expecting his first child with his wife, Velez fabricated outrageous lies that Nayshtut had "drugged" her, despite the fact that Velez had just praised

Nayshtut's treatment three days prior stating that she should do a "ketamine documentary." As Velez made clear to Nayshtut: "You step on my feelings, now you're gonna pay me."

95.     What Nayshtut did not know at the time, however, was that Velez has a long history of threatening, manipulating, and extorting wealthy men—including working for the Sinaloa Cartel, infamously headed by Joaquin "El Chapo" Guzman ("El Chapo"), as well as, on information and belief, attempting to bribe a high-ranking Mexican military official for $10 million.

96.     Velez is a criminal. Velez is a woman scorned. And Nayshtut is only the latest victim of Velez's scheme. Velez has used her power, status, and self-proclaimed governmental "immunity" to extort money from numerous wealthy men. Nayshtut now brings this action to expose and seek redress for the false and malicious statements and related conduct of Velez.

**a.  Nayshtut's Background**

97.     Nayshtut is an American Double Boarded physician, boarded in Pediatric Anesthesiology and General Anesthesiology with scope of practice in Pain Management.

98.     Nayshtut has been a Medical Doctor for over 12 years, dedicating his life to serve the community.

99.     Nayshtut has committed most of his life pursuing higher level education to provide the best care by training in highly prestigious training programs including University of Rochester Medical Center and George Washington University Children's National Medical Center.

100.    Nayshtut currently practices in Anesthesiology for both pediatric and adult populations as well as pain management for pediatric and adult populations.

101.    Nayshtut currently practices in academics training young aspiring Anesthesiology Residents and Pain Doctors and also is a Medical Director of a private Pain Management practice.

**b. Velez's Background**

102.    Velez has a long history of extorting, bribing, and threatening wealthy men to get her way.

103.    Indeed, Velez admittedly co-conspired with El Chapo and the Sinaloa Drug Cartel (the "Cartel") to commit crimes for years.

104.    Velez even publicly stated that she considered the Cartel members her "family." *See Woman who dodged El Chapo hit speaks at the drug lord's sentencing*, NY Post, available at https://nypost.com/2019/07/17/woman-who-dodged-el-chapo-hit-speaks-at-drug-lords-sentencing/.

105.    Velez's work for the Cartel centered around her master manipulation techniques, and included heading up a "modeling agency" in Mexico City, wherein she would arrange "private parties" between women and wealthy men. *See El Chapo actually wanted to kill the messenger: testimony*, NY Post, available at *https://nypost.com/2019/01/15/el-chapo-actually-killed-the-messenger-testimony/*.

106.    On information and belief, Velez attempted to bribe a high-ranking government official for millions of dollars to let El Chapo "live in peace." When her attempts were unsuccessful, El Chapo allegedly ordered her killed. *See El Chapo ordered a woman employee killed after her bid to bribe Mexican official failed*, NY Daily News, available at https://www.nydailynews.com/2019/01/15/el-chapo-ordered-a-woman-employee-killed-after-her-bid-to-bribe-mexican-official-failed/.

107.    On information and belief, Velez entered into a cooperation agreement with the Federal Bureau of Investigation ("FBI") and Office of the United States Attorney for the Southern District of New York ("USAO") prior to El Chapo's indictment and trial in exchange for a reduced

sentence for her own crimes.

108.    On information and belief, however, Velez chose to cooperate with the USAO and FBI only after she learned that El Chapo intended to kill her.

109.    Despite her experiences with the Cartel, however, Velez was not called to testify against El Chapo at his trial in 2019.

110.    Rather, the FBI and USAO permitted Velez to speak only at El Chapo's sentencing where she was not administered the oath, and her statements were unsworn.

111.    Velez's lies and intimidation have even leaked into her cooperation agreement. Indeed, on information and belief, since cooperating with the FBI and USAO, Velez has told people, including Nayshtut, that she was "raped by an FBI agent."

112.    Velez is using her experience from working with the Cartel and the FBI to intimidate, defame, extort, and harass Nayshtut. Indeed, Velez has boasted that she was given a Rolex for speaking at the sentencing hearing, stating: "we laugh they gave me this watch and plaque." On information and belief, has insinuated that she is protected, regardless of what she does, as the FBI agents used her to "make their career(s)." Nayshtut is one of many victims of Velez's coercion and lies.

113.    Further, this is not an isolated incident for Velez. Indeed, Velez has a history of threatening to extort and defame others when she does not get her way.

114.    For example, Velez entered into a business arrangement with Anthony Bosch, who, on information and belief, formerly operated a medical clinic in Florida while posing as a doctor and received a prison sentence for such conduct. *See Biogenesis owner Anthony Bosch sentenced to 4 years*, USA Today, available at https://www.usatoday.com/story/sports/mlb/2015/02/17/former-owner-of-mlb-steroid-clinic-

sentenced-to-4-years/23548467/.

115.    In or about June 2024, Velez threatened and insinuated that she would resort to violence against Bosch if he did not give her the answers she wanted as part of their business venture.

116.    On information and belief, and similar to what Velez has done to Nayshtut, Velez demanded that Bosch give her the money back that she had initially paid him, stating, by way of example and not limitation[1]:

   a.   Velez stated to Bosch that she can "be a liability" and that he can "FUCK AROUND AND FIND OUT."

   b.   Velez also stated to Bosch in Spanish, "Si no tienes palabras mi hermano ya tu sabe", meaning "If you don't have words, my brother, you already know".

   c.   Velez further reminded Bosch that she is protected by "SDNY", meaning the USAO and FBI.

   d.   Velez also further stated that she had "nothing to lose just the check [Bosch] accepted."

117.    Velez's conduct makes it clear that she will do whatever it takes, including threaten, intimate, and fabricate lies, in order to get her way, and to get money.

   **c.   Nayshtut and Velez Enter into a Joint Business Venture, Velez Requests that Nayshtut Perform Ketamine Treatment on Her**

118.    In the Spring of 2023, Nayshtut and Velez maintained businesses in the same commercial building in New York City. Nayshtut maintained 5th Avenue Wellness Medicine, a pain management practice, and Velez maintained Renuev Medical Spa (the "Spa").

119.    As part of Nayshtut's practice, he offers Ketamine Therapy, which helps patients

---

[1] There have been additional individuals who have reached out to Nayshtut stating that Velez has threatened and extorted them in a similar manner. These individuals have been scared of involvement in this matter due to Velez's threats. One individual stated, "Stay far away…you're dealing with a different class of people. They have nothing to lose."

alleviate ailments such as chronic pain, migraines, depression, and anxiety. Outpatient Ketamine clinics have become increasingly popular to treat depression in recent years and is generally considered a safe treatment when performed by a licensed professional[2]. *See Ketamine for treatment-resistant depression: When and where is it safe?*, Harvard Health, available at https://www.health.harvard.edu/blog/ketamine-for-treatment-resistant-depression-when-and-where-is-it-safe-202208092797.

120.    Nayshtut and Velez met in or around March 2023.

121.    Nayshtut was and still is married, and Velez was aware that Nayshtut had a wife.

122.    Over the next few months, Nayshtut and Velez entered into a joint business venture wherein they became 50/50 co-owners of Renuev Spa.

123.    Nayshtut's role in the joint venture was to implement medical treatment within the Spa, in order to officially make Renuev a medical spa[3]. It was not the intention of the partnership, nor was it written in any agreement, that Nayshtut was to be the sole financer of the Spa.

124.    Velez has also heavily pursued ketamine therapy from Nayshtut.

125.    Indeed, as evidenced by her text messages, Velez sought out treatment from Nayshtut on numerous occasions. By way of example, and not limitation:

126.    On June 1, 2023, Velez and Nayshtut engaged in a text conversation regarding Velez's desire for ketamine therapy:

> Velez:        Soon Ketamine
> Nayshtut:    You tell me when

---

[2] Additionally, the nasal spray form of Ketamine has received FDA approval for depression and the FDA labeled it a "breakthrough therapy." *See FDA approves new nasal spray medication for treatment-resistant depression; available only at a certified doctor's office or clinic*, FDA, available at https://www.fda.gov/news-events/press-announcements/fda-approves-new-nasal-spray-medication-treatment-resistant-depression-available-only-certified.

[3] A medical spa differs from a traditional spa in that a medical spa operates under the supervision of one or more medical professionals, allowing the spa to offer medical-grade treatments.

| Velez: | So hopefully this is a flat road |
| | I would like things proper way so first step is get Angela my case therapist involved |
| | After we could make a plan, I have bad trips when I'm not in control |
| | For now, I just want the ketamine pod |
| Nayshtut: | Ok, as you wish |
| Velez: | Soon |
| | Birthday wish ketamine Pod |

127.    On August 3, 2023, Velez again expressed her desire for ketamine therapy:

| Velez: | Wait until I do ketamine |
| | October |
| Nayshtut: | [thumbs up emoji] |

128.    On August 20, 2023, Velez stated:

| Velez: | Haha but Im more into ketamine now |
| Nayshtut: | Haha |
| | When are we doing you? |
| Velez: | Soon. |

129.    On September 2, 2023, Velez texted Nayshtut:

| Velez: | This town is the ketamine therapy town |
| | Take a screen shot or right [sic] down the day. 74% of the population need it. |
| | Including us. |
| | I mean T [sic] Ivan and me. |

130.    On December 11, 2023, Velez texted Nayshtut, "Could we schedule Ketamine Therapy for me"

131.    In addition to Velez's clear desire to undergo ketamine therapy for herself, she scheduled ketamine therapy for two of her family members on May 7, 2023 and August 8, 2023.

132.    Velez underwent ketamine therapy herself on or around December 12, 2024, January 9, 2024, January 18, 2024, March 6, 2024, March 17, 2024, and March 28, 2024.

133.    Velez sought to continue ketamine therapy and had boasted via phone call and text message how well the ketamine therapy was working for her as recently as March 27, 2024.

14

134.    Nayshtut also financed an endosphere machine for the Spa for $38,276.33 plus 6% annualized interest to be paid in full by April 2025.

135.    In or around November 2023, Nayshtut and Velez entered into an agreement in which Velez would pay Nayshtut monthly for the endosphere machine.

136.    Velez has only made two monthly payments on the machine of $2,255 since November 2023.

**d.  Velez Accuses Nayshtut of Sexual Abuse in an Attempt to Extort Money from Nayshtut**

137.    On or around February 3, 2024, Nayshtut informed Velez that his wife was expecting their first child.

138.    On information and belief, Velez used this situation to manipulate Nayshtut, knowing that he would do anything to not lose his family.

139.    After finding out that Nayshtut's wife was expecting, Velez went on a tirade and began a widespread smear campaign against Nayshtut, accusing him of heinous crimes.

140.    That same day, Velez texted Nayshtut stating: "You definitely have guts to play with me. I want all accounting clear up [sic]. Happy Easter for you and wife and baby. I just was an entertainment for you. Let's see how the dice rolls [sic]."

141.    Significantly, just one day later on March 31, 2024, Velez stated for the first time that ketamine may "not be the right fit" for her. Notably, just four days prior, Velez had boasted how well the ketamine therapy was working for her.

142.    From that point on, Velez began to threaten Nayshtut's medical reputation as well as his family if she did not get her way.

143.    On April 7, 2024, Velez began flexing her ties with government agents, claiming that government agents used her in the El Chapo case to "make their careers" and gave her a Rolex

and a plaque for testifying at the sentencing hearing.

144.    In the Spring of 2024, despite her fierce pursuance of Nayshtut for both a romantic relationship and ketamine treatment, and around the time that Nayshtut began asking Velez for her payments for the endosphere machine, Velez also first began falsely accusing Nayshtut of drugging her with ketamine and raping her.

145.    In or around May 2024, the Spa signed a lease agreement for office space. The lease began in July 2024. The total amount due under the lease is approximately $490,000.

146.    Nayshtut, on behalf of his separate business entity, signed a guaranty agreement related to the office space.

147.    Nayshtut felt forced and signed guaranty agreement under economic duress because Velez was simultaneously threatening to report Nayshtut for malpractice and rape if he did not.

148.    Nayshtut, with a medical license to protect and a baby on the way, had no choice but to comply else risk his entire career and livelihood.

149.    Velez's constant text messages and threats have continued to date, and have made clear that Velez's false accusations have stemmed from her anger that Nayshtut chose to spend his free time outside of the office with his newborn baby and wife. By way of example, and not limitation:

    a.  On June 4, 2024, Velez threatened Nayshtut using her "ties" to FBI agents:

        Velez:    **If you are tired have a baby no my decision [sic]
                   Was yours**
                   In the picking of financial freedom
                   You should feel motivated what you achieve in 18 months and focus
                   on big pictures
                   Everything is served on a silver spoon what about me
                   What is your excuse
                   **I have court tomorrow, Thursday fbi meeting im not a DR im
                   [sic] been a target to murder 3 times, this things [sic] make me
                   ansious [sic] but Im not going to collapse**

**Where are you [sic] family baby DR**
Fuck off (emphasis added).

b. On June 19, 2024, Velez was still requesting ketamine therapy from Nayshtut:

| | |
|---|---|
| Nayshtut: | Want a chill iv? |
| Velez: | I need a ketamine coma |
| Nayshtut: | [sad face with tear emoji] |

c. On or around June 27, 2024, Velez used her connections to the Cartel to threaten Nayshtut into paying the rent for the Spa:

| | |
|---|---|
| Velez: | Edwin is gonna text you |
| | Please Zelle |
| Nayshtut: | What do I need to Zelle? |
| Velez: | Rent |
| Nayshtut: | The whole amount? |
| Velez: | Yes |
| | What else |
| | Bills and cash |
| | **Tell your wife** was in a call help youn [sic] |
| Nayshtut: | Tell what? |
| | I don't understand why this is happening? |
| Velez: | Attorneys get huge money |
| | Pay the rent |
| | Two places |
| | Siemple [sic] |
| | We talk in 5 years you understand |
| | Cash business |
| | **Also concerning if you divorced her, what is my cut** |
| | Get it done!!! |
| | **I put all sinaloa cartel in jail so no games** |
| Nayshtut: | I cant afford this |
| Velez: | paper trial [sic] i don't give otybfick [sic] |
| | Sorry. Ask your mom (emphasis added). |

d. In or around June 2024, when planning an event in the Hamptons, Nayshtut informed Velez that he needed to reschedule the event. In response, Velez stated that Nayshtut was selfish, ungrateful, and threatened to tell people about how he allegedly damaged her, saying that she will start "gossiping" and will "tell Adriana." Velez continued on to extend the threat, stating: "most of people play games with me are [out] of circulation." After which, Nayshtut agreed to keep the original date of the event as Velez requested.

e. On July 6, 2024, when discussing finances for the Spa, Nayshtut and Velez engaged in the phone call in which Velez made clear that her allegations and requests for

money were tied to Nayshtut's wife and baby:

| | |
|---|---|
| Nayshtut: | I am paying a good amount. Andrea, when we opened up WSA, we specifically, said you'll be there because I don't have enough time to be between two places. We discussed this. I don't have enough time to be between two places. |
| Velez: | [humming while Nayshtut is speaking] |
| Nayshtut: | You specifically said, you'll pay for it yourself. Andrea please, calm... |
| Velez: | **I changed my mind**. I changed my mind. I changed my mind because you didn't show up and you're lazy **and have the baby, and your wife**. |
| Nayshtut: | I am lazy? |
| Velez: | Yeah. And your wife is pregnant with your fuckin [name]. |
| Nayshtut: | What does that have to do with anything? What do you mean by lazy? I have a lot of priorities Andrea. |
| Velez: | No, no, no. **I need to be one of your priorities**. How about that. |
| Nayshtut: | You are one of my priorities. This business is a huge priority of mine. |
| Velez: | Exactly. And then you don't show up. The fucking point is you don't show up and Andrea is here doing everything. You know what, no, because no one is gonna step on me. **You step on my feelings, now you're gonna [unintelligible] and you pay me**. |
| Nayshtut: | I'm not stepping on your feelings Andrea. I'm trying... |
| Velez: | **You did, you did, you did, you did. Now you pay**. |
| Nayshtut: | And now I pay? Okay. |
| Velez: | See how is your life [sic]. And get on with it. |
| Nayshtut: | When will this end? Because you notice that there is no end to this. |
| Velez: | It ends when you fuckin show up and **heal this**. (emphasis added). |

f. On July 19, again expressing her anger towards Nayshtut for having a baby, Velez stated:

| | |
|---|---|
| Velez: | Please start training Martin I cant deal with your all your [sic] excuses and energy |
| | **So you could transition be in your bubble with your wonderful wife air fryers and stuck** |
| | **Im Fucking DONE** (emphasis added). |

g. On July 30, 2024, Velez texted Nayshtut images of invoices for the Spa, and threatening to encourage others to make false accusations regarding Nayshtut's practice, stating, in pertinent part: "will be tragedy if I am depressed because of you. All your patients will not be happy wither. Patient and celebrities could said [sic] they will weird after chill IVS. So get it done." Velez then went on to state that she was hurt because of Nayshtut's family: "fucking leave my life. **I don't deserve this see you [sic] perfect family after you abuse me under ketamine**."

h.  Velez also threatened to spread these false allegations to her celebrity clients, stating, "I have a fucking celebrities list… Penelope Cruz prob coming tomorrow, Brooke Snyder, Kaia Gerber, Camila Moron, and is no fuckin [ u/i] and then...oh yeah… I don't know…I'm not even licensed here. I don't even speak this language hundred percent and the doctors not here and they want to make millions of dollars are not here with me."

150.    On multiple occasions Velez threatened to use her relationship with the FBI to her advantage by saying she would tell the agents that Nayshtut raped her, which is false, unless Nayshtut agreed to pay Velez millions of dollars.

151.    Velez threatened to tell Nayshtut's wife that he raped Velez and had an extramarital affair unless he agreed to pay Velez millions of dollars.

152.    Velez threatened to make Nayshtut lose his medical license by reporting to the governing authorities that he had raped her while treating her as a patient with ketamine infusions, which was false.

153.    Velez threatened to use her cartel connections unless Nayshtut agreed to pay Velez millions of dollars.

154.    Velez threatened to tell the press that Nayshtut raped her, which is false, unless he agreed to pay Velez millions of dollars.

155.    Velez threatened to tell the police that Nayshtut raped her, which is false, unless he agreed to pay Velez millions of dollars.

156.    Velez threatened to tell Nayshtut's patients that he raped her, which is false, unless he agreed to pay Velez millions of dollars.

157.    Velez threatened to file a public civil lawsuit against Nayshtut alleging that he raped her, which is false, and caused her extreme emotional distress unless he agreed to pay Velez millions of dollars.

158.    As a result of Velez's defamatory statements, Nayshtut has been unable to open or operate his medical practices in Manhattan since in or about July 2024.

159.    Additionally, Velez had Nayshtut's patient files deleted from Nayshtut's new medical record system. Velez had access to Nayshtut's files through their shared EMR[4]. Nayshtut has had no access to his patient files since August 2024.

160.    Because he has been unable to open and operate his pain management practice, Nayshtut has lost approximately $5,000 per week in income since in or about July 2024.

161.    Because he has been unable to open and operate his medical practices in Manhattan, Nayshtut has lost clients of his business.

162.    Additionally, Nayshtut has paid over $40,000 for an endosphere machine for the Spa and approximately $3,000 for a PRP machine, for which Velez has refused to pay Nayshtut back.

## AS AND FOR A FIRST COUNTERCLAIM
### Defamation *Per Se*

163.    Nayshtut repeats and realleges each and every allegation above as if fully set forth herein.

164.    From approximately March 2024 to the present, Velez made statements about Nayshtut, stating that he had drugged and sexually assaulted her.

165.    On multiple occasions, Velez orally stated to other individuals who are either tenants, employees, or owners of the commercial space in which Nayshtut and Velez rented offices that Nayshtut sexually assaulted her on multiple occasions while she was under the influence of ketamine (the "Office Defamatory Ketamine Statement").

---

[4] Nayshtut has also received a bill for $1,680.60 from the EMR service.

166.    On multiple occasions, Velez orally stated to other individuals who are associates or friends of Velez that Nayshtut sexually assaulted her on multiple occasions while she was under the influence of ketamine (the "Friend Defamatory Ketamine Statement" and together with the Office Defamatory Ketamine Statement, the "Defamatory Ketamine Statements").

167.    On multiple occasions, Velez orally stated to other individuals who are either tenants, employees, or owners of the commercial space in which Nayshtut and Velez rented offices that Nayshtut raped her through anal penetration (the "Office Defamatory Rape Statement").

168.    On multiple occasions, Velez orally stated to other individuals who are associates or friends of Velez that Nayshtut raped her through anal penetration (the "Friend Defamatory Rape Statement" and together with the Office Defamatory Rape Statement, the "Defamatory Rape Statement") (hereinafter collectively referred to as the "False Statements").

169.    Velez's Defamatory Ketamine Statements are false.

170.    Velez's Defamatory Rape Statements are false.

171.    When Velez made the False Statements about Nayshtut, she did so with negligence and actual malice, or with the actual knowledge that the statement was false or with reckless disregard as to the truth or falsity of the statement.

172.    The False Statements were intended to, and did, expose Nayshtut to public contempt, aversion, disgrace, and induce an evil opinion in the minds of right-thinking persons, and caused Nayshtut substantial harm including but not limited to reputational harm, lost career opportunities, and emotional distress.

173.    The False Statements made by Velez are not privileged, as the communications were not made in the kind of circumstances in which an absolute protection applies or in which it was necessary or appropriate to make those communications subject to a qualified privilege.

174.    Velez's statements about Nayshtut were defamatory per se in that they charged Nayshtut with the serious crime of sexual assault and malpractice.

175.    Nayshtut is entitled to per se damages because the defamatory statements made by Velez were inherently harmful, in that they charged Nayshtut with the serious crime of sexual assault and malpractice.

176.    Nayshtut's reputation has been irreparably damaged as the result of the defamatory statements.

177.    Nayshtut suffered emotional anguish and mental distress as a result of Velez's false and defamatory statements.

178.    Nayshtut suffered economical damages, including lost career opportunities as a result of Velez's false and defamatory statements.

179.    Velez's False Statements proximately caused Nayshtut's damages.

180.    Velez acted with the sole intention of harming Nayshtut, and made statements which lacked substantial justification, which warrants an award of attorneys' fees.

181.    For the above stated reasons, Nayshtut is entitled to damages in an amount to be determined at trial, including per se damages, actual and compensatory damages, reputational damages, emotional distress damages, punitive damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements.

## AS AND FOR A SECOND COUNTERCLAIM
### Defamation *Per Quod*

182.    Nayshtut repeats and realleges each and every allegation above as if fully set forth herein.

183.    Pleading in the alternative to Count I, Nayshtut realleges each of the allegations contained therein as defamation per se, and here alleges that each of the false statements also

constitutes general defamation under New York law. Nayshtut thus claims here that if the Court finds that any of the false statements identified under Count I do not constitute defamation per se, then in the alternative Nayshtut claims here that any and all false statements not qualifying as defamation per se constitute general defamation against Nayshtut.

184.    Velez made false accusations that Nayshtut drugged her and committed malpractice.

185.    Velez made false accusations that Nayshtut subjected her to sexual assault.

186.    Velez made the False Statements with knowledge of or reckless disregard as to the falsity of those statements because she knows that no sexual assault or malpractice occurred.

187.    Velez's False Statements tarnished Nayshtut's reputation and public image, and caused him to incur actual damages. Such damages include, but are not limited to, loss of income from Nayshtut's medical practice in the amount of approximately $5,000 per week since July 2024 that Nayshtut would have otherwise received had Velez not made the False Statements that tarnished Nayshtut's reputation, and public image, loss of past and future career earnings, emotional distress, punitive damages, and attorneys' fees and costs.

188.    Velez's primary purpose in making the False Statements was to indulge ill will, hostility, and an intent to harm Nayshtut.

189.    Wherefore, Nayshtut respectfully demands judgement against Velez in an amount to be determined at trial, including but not limited to actual damages, punitive damages, attorneys' fees, costs, interest, and other just and further relief as this Court deems just and equitable.

### AS AND FOR A THIRD COUNTERCLAIM
**Intentional Infliction of Emotional Distress**

190.    Nayshtut repeats and realleges each and every allegation above as if fully set forth herein.

191.    By making the defamatory statements described above and embarking on a smear campaign against Nayshtut, Velez engaged in extreme and outrageous conduct.

192.    By threatening to tell Nayshtut's wife that he raped Velez, Velez engaged in extreme and outrageous conduct.

193.    By filing a public Complaint full of lies against Nayshtut, Velez engaged in extreme and outrageous conduct that exceeded all possible bounds of decency.

194.    Velez engaged in the extreme and outrageous conduct with the intent to cause Nayshtut severe emotional distress.

195.    By engaging in the extreme and outrageous conduct, Velez disregarded the substantial probability that her threats and lies would cause Nayshtut severe emotional distress.

196.    Velez's defamatory statements and threats are the direct and proximate cause of the severe emotional distress that Nayshtut is experiencing.

197.    Velez's defamatory statements and threats have caused Nayshtut to experience severe emotional distress, including emotional pain and suffering, humiliation, embarrassment, anxiety, loss of enjoyment of life, extreme emotional trauma, loss of appetite, insomnia, depression, and panic attacks.

198.    As a result, Nayshtut claims compensatory and punitive damages herein in an amount to be determined at trial.

### AS AND FOR A FOURTH COUNTERCLAIM
#### Negligent Infliction of Emotional Distress

199.    Nayshtut repeats and realleges each and every allegation above as if fully set forth herein.

200.    Velez's negligence caused Nayshtut to suffer severe emotional distress.

201.    As a member of a joint business venture with Nayshtut, Velez owed Nayshtut a duty

of care to act in the best interests of the business.

202.    Velez breached the duty of care she owes Nayshtut by engaging in a smear campaign and making defamatory statements against him.

203.    Velez breached the duty of care she owes Nayshtut by threatening him and extorting him for $1.5 million.

204.    Velez's breach of the duty of care was the direct and proximate cause of the severe emotional distress Nayshtut is experiencing.

205.    Velez's defamatory statements and threats have caused Nayshtut to experience severe emotional distress, including emotional pain and suffering, humiliation, embarrassment, anxiety, loss of enjoyment of life, extreme emotional trauma, loss of appetite, insomnia, depression, and panic attacks.

206.    Velez's conduct in breaching the duty of care was outrageous and extreme and exceeded all possible bounds of decency.

207.    As a result, Nayshtut claims compensatory and punitive damages herein in an amount to be determined at trial.


### AS AND FOR A FIFTH COUNTERCLAIM
**Economic Duress**

208.    Nayshtut repeats and realleges each and every allegation above as if fully set forth herein.

209.    Velez threatened to defame Nayshtut unless he agreed to enter into a lease agreement for office space in May 2024 for Renuev Spa Inc.

210.    Velez threatened to defame Nayshtut unless he entered into a guaranty agreement related to the lease of office space in May 2024 for Renuev Spa Inc.

211.   Velez threatened to tell Nayshtut's wife that he raped Velez, which is false, unless he agreed to enter into a lease agreement and guaranty agreement for office space in May 2024 for Renuev Spa Inc.

212.   Velez threatened to tell the police that he raped Velez, which is false, unless he agreed to enter into a lease agreement and guaranty agreement for office space in May 2024 for Renuev Spa Inc.

213.   Velez threatened to tell Nayshtut's patients, clients and business associates that he raped Velez, which is false, unless he agreed to enter into a lease agreement and guaranty agreement for office space in May 2024 for Renuev Spa Inc.

214.   Velez threatened to use her connections to the FBI to cause Nayshtut to lose his medical license and freedom unless he agreed to enter into a lease agreement and guaranty agreement for office space in May 2024 for Renuev Spa Inc.

215.   Velez insinuated that she would become violent by referencing her cartel connections unless Nayshtut agreed to enter into a lease agreement and guaranty agreement for office space in May 2024 for Renuev Spa Inc.

216.   As a direct result of Velez's threats, Nayshtut feared for his personal safety, his family's safety, his reputation, his business's reputation, and his livelihood.

217.   Nayshtut believed and felt that he had no choice but to enter into the lease agreement and guaranty agreement in May 2024.

218.   Nayshtut involuntarily and against his free will entered into the lease agreement and guaranty agreement.

219.   Nayshtut had no other option but to enter into the lease agreement and guaranty agreement to protect his family, his reputation, and his livelihood.

220.    Since entering into the lease agreement, Velez has used the same threats to demand that Nayshtut pay the monthly rent due pursuant to the lease agreement, even though Nayshtut does not operate Renuev Spa Inc. anymore and does not use the leased office space.

221.    Nayshtut has been paying the monthly rent due under the lease agreement since in or about July 2024 and is liable for the approximately $500,000 value of the lease.

222.    As a result of the economic duress Nayshtut was under at the time he signed the lease agreement and guaranty agreement, the lease agreement and guaranty agreement are void and unenforceable.

223.    Nayshtut seeks a declaratory judgment ordering that the May 2024 lease agreement and May 2024 guaranty agreement are unenforceable and void.

224.    Nayshtut also seeks compensatory damages for all amounts he has paid pursuant to the May 2024 lease agreement in an amount to be proven at trial.

## PRESERVATION OF DEFENSES

225.    Defendant reserves the right to raise additional and other affirmative defenses that may subsequently become or may appear upon information and belief to be applicable to the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant Michael Nayshtut seeks judgment against Plaintiff Velez as follows:

i.    On the First Cause of Action for Defamation *Per Se*, judgment against Velez awarding Nayshtut damages in an amount to be determined at trial, including *per se* damages, actual and compensatory damages, reputational damages, emotional distress damages, punitive damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements;

ii.    On the Second Cause of Action for Defamation, judgment against Velez awarding Nayshtut damages in an amount to be determined at trial, including actual and compensatory damages, reputational damages, emotional distress damages, punitive damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements;

iii.    On the Third Cause of Action for Intentional Infliction of Emotional Distress, judgment against Velez awarding Nayshtut damages in an amount to be determined at trial, including actual and compensatory damages, reputational damages, emotional distress damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements;

iv.    On the Fourth Cause of Action for Intentional Negligent of Emotional Distress, judgment against Velez awarding Nayshtut damages in an amount to be determined at trial, including actual and compensatory damages, reputational damages, emotional distress damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements;

v.    On the Fifth Cause of Action for Economic Duress, (a) judgment against Velez awarding Nayshtut damages in an amount to be determined at trial, including actual and compensatory damages, reputational damages, emotional distress damages, prejudgment interest, attorneys' fees, costs, expenses, and disbursements; and (b) declaratory judgment ordering that the May 2024 lease agreement and May 2024 guaranty agreement are unenforceable and void; and

vi.    Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Michael Nayshtut herein demands a trial by jury of all triable issues in the present matter.

**Dated: New York, New York**
     **May 9, 2025**

                                       **THE LAW OFFICES OF JEFFREY LICHTMAN**

                                     **By:** **/s/ *Jeffrey Lichtman***
                                           **Jeffrey Lichtman, Esq.**
                                           **441 Lexington Ave, Suite 504**
                                         **New York, NY 10017**
                                         **Tel: (212) 581-1001**
                                         jhl@jeffreylichtman.com
                                         *Attorneys for Michael Nayshtut*

                                     **NESENOFF & MILTENBERG, LLP**

                                     **By:** **/s/ *Andrew T. Miltenberg***
                                           **Andrew T. Miltenberg, Esq.**
                                           **363 Seventh Avenue, Fifth Floor**
                                         **New York, New York 10001**
                                         **Tel: (212) 736-4500**
                                         **amiltenberg@nmllplaw.com**
                                         *Attorneys for Michael Nayshtut*